IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GERALD EDWARDS,                    )
                                   )
                Plaintiff,         )
                                   )    CIVIL ACTION
v.                                 )
                                   )    No. 07-2157-KHV-JTR
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
                Defendant.         )
_____)

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). The court recommends the Commissioner's decision be REVERSED and judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

I.   Background

Plaintiff applied for DIB and SSI alleging disability beginning Oct. 3, 2003. (R. 16, 67-75). His applications were denied, and plaintiff sought a hearing before an Administrative

Law Judge (ALJ).  (R. 16, 33, 34, 35, 412).  An ALJ hearing was
held at which plaintiff was represented by an attorney, and
testimony was taken from plaintiff and a vocational expert.  (R.
16, 418-54).  On Oct. 24, 2006, the ALJ issued a decision denying
plaintiff's applications, and finding that plaintiff is able to
perform his past relevant work as a cashier and is, therefore,
not disabled within the meaning of the Act.  (R. 20-21).

        As relevant here, the ALJ found that plaintiff has severe
impairments consisting of:  "heart disease, epilepsy, emphysema,
headaches, and reflux."  (R. 18).  She evaluated plaintiff's
allegations regarding the intensity, duration, and limiting
effect of his symptoms and determined plaintiff's allegations are
not credible.  (R. 19-20).  The ALJ evaluated a "residual
functional capacity questionnaire" completed by Dr. Hairston-
Mitchell and two residual functional capacity (RFC) assessments
produced by the state agency reviewing physicians.  (R. 19-20).
She gave no weight to Dr. Hairston-Mitchell's opinion, little
weight to the first RFC assessment produced at the lower level
(Ex. 5F (R. 232-41)), and controlling weight to the second RFC
assessment produced at the lower level (Ex. 14F (R. 344-51)).
(R. 20).  After considering the evidence, plaintiff's
allegations, and the medical opinions, the ALJ assessed plaintiff
with the RFC "to perform light work with a sit/stand option and
occasional postural changes."  (R. 19).  The ALJ considered the

mental and physical demands of plaintiff's past work as a cashier, and based upon the RFC assessed, determined plaintiff is capable of performing past work as it is generally performed in the economy. (R. 20-21). Therefore, she found that plaintiff is not disabled within the meaning of the Act, and denied his applications. (R. 21).

Plaintiff disagreed with the ALJ's decision and sought, but was denied, Appeals Council review of that decision. (R. 6-10). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 6); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents his engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520; 416.920 (2006); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not

disabled, evaluation under a subsequent step is not necessary."
Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520; 416.920. This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred (1) in not finding that plaintiff's mental impairments are "severe" within the meaning of

-5-

the Act and regulations; (2) in improperly evaluating the treating source opinion and giving controlling weight to the opinion of a non-examining source; and (3) in failing to perform a function-by-function assessment of plaintiff's residual functional capacity. The Commissioner argues that plaintiff points to no evidence that mental impairments have any effect on his ability to perform basic work activities; that the ALJ properly evaluated Dr. Hairston-Mitchell's medical opinion and need not recontact the physician; and that the ALJ made a function-by-function assessment of plaintiff's abilities when posing hypothetical questions to the vocational expert, and her failure to explicitly include such an assessment in the decision is harmless error. The court will address the issues in the order of the sequential evaluation process.

## III. Step Two

Plaintiff claims the ALJ erred at step two of the sequential evaluation process because he did not find plaintiff's mental impairments "severe." He argued that the record contains evidence showing plaintiff has depression, anxiety, stress, problems with memory, and short attention span which "impose more than a 'minimal restriction' on his ability to perform work activities." (Pl. Br. 18). He argued that the ALJ did not consider the combined effects of mental impairments and physical impairments because the ALJ did not find the mental impairments

severe.  (Pl. Br. 19).  The Commissioner argued that it is plaintiff's burden at step two to show a severe impairment, that plaintiff made no attempt to identify any limitations resulting from mental impairments, that the record contains no evidence showing limitations resulting from mental impairments, and that the ALJ properly did not find severe mental impairments.  (Comm'r Br. 7-9).  In his reply brief, plaintiff argued that there is no mention of mental impairments in the decision and, therefore, the Commissioner's arguments are impermissible "post hoc rationalization."  (Reply 4)(citing SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943)).

As the Commissioner argues, plaintiff has the burden at step two to show a medically severe impairment. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  And he need make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities. Williams, 844 F.2d at 751.  However, he must show more than the mere presence of a condition or ailment.  Id. (citing Yuckert, 482 U.S. at 153).  Here, plaintiff has not met his burden. Plaintiff asserts that his mental impairments "impose more than a 'minimal restriction' on his ability to perform work activities," (Pl. Br. 18), but as the Commissioner points out, plaintiff does not identify any limitations or restrictions on his ability to

-7-

perform basic work activities that are caused by his mental impairments.  As the Commissioner argues, the record does not provide evidence of limitations on ability to perform basic work activities caused by plaintiff's mental impairments.  Plaintiff has shown no error at step two of the evaluation process.

Plaintiff attempts to overcome the Commissioner's burden of proof argument by asserting that the ALJ did not discuss mental impairments in the decision and, therefore, the Commissioner's arguments are merely "post hoc rationalizations."  This attempt is unavailing.

As plaintiff's argument implies, the court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004); and SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)); see also, Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  In this case, however, the ALJ's treatment of the evidence is apparent.

As plaintiff argues, the ALJ did not discuss the evidence relating to plaintiff's mental impairments.  Nonetheless, when one considers that evidence, it becomes immediately apparent why the ALJ did not discuss it.  The evidence is not relevant to consideration of severe mental impairments because it does not

present any limitations in plaintiff's ability to perform basic work activities and, therefore, cannot establish a severe mental impairment.

An ALJ is not required to discuss every piece of evidence in the record. Such a rule would require undue length of decisions and undue time in preparing a decision. Therefore, an ALJ need not discuss evidence which points to but one conclusion. Rather, in addition to discussing the evidence supporting her decision, the ALJ must discuss the uncontroverted evidence she chooses <u>not</u> to rely upon, as well as significantly probative evidence she <u>rejects</u>. <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). This is true because if such evidence is not discussed, the court will be unable to determine if the ALJ was aware of evidence in the record which is contrary to her opinion and, if she was aware of the evidence, why the evidence was rejected or why the ALJ did not rely upon it. On the other hand, where the uncontroverted evidence is relied upon or the significantly probative evidence is accepted by the ALJ, the evidence is in accordance with the ALJ's decision and the reader or the reviewing court will understand the significance of the evidence to the opinion.

Here, the evidence cited in the Commissioner's brief but not discussed in the ALJ's decision, is significantly probative of the fact that plaintiff's mental impairments are not severe

-9-

because they do not cause restrictions in plaintiff's ability to perform basic work activities.  The ALJ accepted this significantly probative evidence and she need not discuss it. Further, the evidence cited is uncontroverted.  The court did not find and plaintiff did not point to any evidence that mental impairments cause more than minimal limitations in plaintiff's ability to perform basic work activities.  The ALJ relied on this uncontroverted evidence, and she need not discuss it.

Another way of explaining the same result is that where plaintiff has the burden of establishing a fact and does not make an argument to the Commissioner tending to assert that fact, and where the evidence does not establish that fact, the ALJ need not specifically state that the fact is not established.  Otherwise, the ALJ would need to specifically state each fact which is <u>not</u> established by the evidence and if she did not, a plaintiff could show error by alleging the ALJ failed to discuss an uncontroverted or significantly probative fact which is apparent on the face of the record and about which the ALJ may be unaware of any controversy or contrary allegation.  The ALJ did not err in failing to find plaintiff's mental impairments severe.

Plaintiff also argued that because the ALJ did not find plaintiff's mental impairments severe, she did not consider the combined effect of plaintiff's mental and physical impairments. Plaintiff's argument misunderstands the regulations.  The

regulations provide that in considering whether a claimant's
impairments are of disabling severity, the Commissioner "will
consider the combined effect of all of your impairments without
regard to whether any such impairment, if considered separately,
would be of sufficient severity."  20 C.F.R. §§ 404.1523,
416.923.  Therefore, the fact that the ALJ did not find severe
mental impairments does not mean that the mental impairments were
not considered in combination with plaintiff's other impairments.

The record reveals that several times the ALJ stated she had
considered the entire record, or all of the evidence.  (R. 16,
18, 19, 20).  Moreover, at step three the ALJ stated she
evaluated "claimant's impairments," and at step four she stated
that her RFC assessment was made "[a]fter careful consideration
of the entire record."  (R. 19).  As the Tenth Circuit has noted,
the general practice is for a court "to take a lower tribunal at
its word when it declares that it has considered a matter."
Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).
Therefore, since plaintiff has not shown specific evidence that
the ALJ ignored plaintiff's mental impairments, the court will
take the ALJ's word and will not find that the ALJ failed to
consider all of plaintiff's impairments in combination.

## IV.  Evaluation of Medical Opinions

Plaintiff claims the ALJ erred either by (1) failing to
accord controlling weight to the opinion of plaintiff's treating

physician, Dr. Hairston-Mitchell, (2) failing to give appropriate deference to Dr. Hairston-Mitchell's opinion, or (3) failing to seek clarification of Dr. Hairston-Mitchell's opinion, and by (4) erroneously according controlling weight to the opinion of the non-examining state agency physician. (Pl. Br. 12-15). The Commissioner argues that Dr. Hairston-Mitchell is an examining medical source rather than a treating source, that the ALJ properly evaluated her opinion, that the record reveals no need to recontact the physician, and that substantial evidence in the record supports the ALJ's evaluation of Dr. Hairston-Mitchell's opinion. (Comm'r Br. 9-12). The Commissioner did not address the alleged error in according controlling weight to the state agency physician's opinion. In his reply, plaintiff argued that the Commissioner's argument is merely "post-hoc rationalization;" that in any case the evidence shows that Dr. Hairston-Mitchell's opinion is worthy of greater weight than any other physician's opinion; that the ALJ's rejection of the opinion was based upon the ALJ's credibility judgment, speculation, or lay opinion, and not on contradictory medical evidence; and assuming that rejecting the opinion was proper, basing rejection on the fact that the opinion is inconsistent with plaintiff's testimony means that the opinion is inadequate to determine disability and triggers the ALJ's duty to recontact the physician. (Reply, 1-3). The court finds that the ALJ properly explained her

consideration of Dr. Hairston-Mitchell's opinion, but erred as a matter of law in according controlling weight to the opinion of a non-examining state agency physician.  Remand is necessary for the ALJ to properly weigh the medical opinions.

A treating source is a physician who has given medical treatment or evaluation and who has an ongoing treatment relationship with the claimant.  20 C.F.R. §§ 404.1502, 416.902. As the Commissioner explained, the Tenth Circuit will find a physician is a treating source if she "has seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of the claimant's impairment.'" (Comm'r Br. 9) (quoting Doyal v. Barnhart, 331 F.3d 758, 763 (10th Cir. 2003)).

The Commissioner has defined "controlling weight" as the weight given "to a medical opinion from a treating source that must be adopted."  Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 112 (Supp. 2007).  Four conditions must be fulfilled before an opinion may be given "controlling weight:" (1) the opinion must come from a "treating source," (2) it must be a "medical opinion," (3) it must be "well supported" by "medically acceptable" clinical and laboratory diagnostic techniques, and (4) it must be "not inconsistent" with the other "substantial evidence" in the record.  Id.

Here, the ALJ gave "controlling weight" to the opinions expressed in Exhibit 14F.  (R. 20).  That exhibit is an RFC

assessment form completed by a state agency physician on Dec. 13, 2004.  (R. 344-51).  The physician never examined plaintiff, and his RFC assessment is based entirely upon a review of the record evidence.  (R. 344, 345, 349).  This exhibit fails to meet the conditions to be given "controlling weight" in at least two respects.  The physician is not a "treating source," and the opinion is inconsistent with the opinion of Dr. Hairston-Mitchell which constitutes other "substantial evidence" in the record.  Therefore, it was error to accord "controlling weight" to this opinion, and remand is necessary to properly weigh the medical opinions.

While the ALJ clearly erred in applying the incorrect standard to weigh the medical opinions, her analysis of Dr. Hairston-Mitchell's opinion is correct in so far as it goes.  As the Commissioner argues, Dr. Hairston-Mitchell is not a "treating source" within the meaning of the law.  The record documents only one visit with Dr. Hairston-Mitchell--on July 29, 2004.  (R. 320-27).  The record reveals this was a referral "for adjustment of Dilantin level."  (R. 320).  There is no other record which evidences specific treatment or office visit by Dr. Hairston-Mitchell.  On Aug. 15, 2005, Dr. Hairston-Mitchell completed a "Seizures Residual Functional Capacity Questionnaire."  (R. 352-55).  When providing information on "Frequency and length of

contact" in the questionnaire, Dr. Hairston-Mitchell stated, "Met 7/29/04 & 8/15/04."  (R. 351).

The record evidence does not establish that Dr. Hairston-Mitchell is a treating source.  Rather, it appears that Dr. Hairston-Mitchell provided service more in the nature of an examining source who examined plaintiff once (maybe twice, but the record contains no treatment notes regarding a second examination on Aug. 15, 2004) and provided an opinion regarding plaintiff's restrictions and limitations based upon that examination.  Dr. Hairston-Mitchell is not a treating source. Therefore, as discussed above, the ALJ is prohibited from assigning controlling weight to her opinion despite plaintiff's argument to the contrary.

The ALJ noted Dr. Hairston-Mitchell's opinion that plaintiff has seven seizures a week which last twenty minutes, and the ALJ also noted that the medical evidence does not substantiate seizures of that frequency, the evidence shows plaintiff's epilepsy is stable on tegretol and phenytoin, and that plaintiff testified he had not had a seizure since 2003.  (R. 19).  The ALJ gave no weight to Dr. Hairston-Mitchell's opinion because it is not substantiated by claimant's testimony or by any evidence from the record.

The ALJ's finding is supported by substantial evidence in the record.  Moreover, even Dr. Hairston-Mitchell's treatment

-15-

records reveal that plaintiff "denies seizures since 2002." (R. 320). Beyond Dr. Hairston-Mitchell's bare opinion, there is simply nothing in the record which would indicate seizures of the frequency or severity, or resulting in the limitations opined by the physician. The ALJ need not provide additional analysis or support for such a clearly-supported finding relevant to the opinion of an examining source.

Plaintiff claims the ALJ should have recontacted Dr. Hairston-Mitchell because he found the physician's opinion inconsistent with plaintiff's testimony, thus making the opinion inadequate to determine disability. The court does not agree. As plaintiff argues, the regulations require the Commissioner to recontact a treating source "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). The short answer to plaintiff's argument is that Dr. Hairston-Mitchell is not a treating source, and the recontact regulation does not apply to her opinion.

Moreover, the Tenth Circuit has explained that "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's]

treating physician' that triggers the duty." <u>White</u>, 287 F.3d at
908.  In <u>White</u>, the court noted that where the ALJ believed the
information was adequate to make a determination and that the
physician's conclusion was wrong, "[g]iven the nature and limits
of our review, and given as well the detailed reasons offered by
the ALJ for rejecting [the physician's] opinion, we do not
second-guess his decision." <u>Id.</u> 287 F.3d at 909.  For the same
reasons, the court will not second-guess the ALJ's determination
here that Dr. Hairston-Mitchell's opinion is wrong, nor her
decision not to recontact the physician.

**V.   Function-by-Function Assessment**

Citing SSR 96-8p, plaintiff asserts that an ALJ is required
to identify plaintiff's functional restrictions on a function-by-
function basis, but that the ALJ in this case assessed plaintiff
with the RFC "to perform 'light work with a sit/stand option and
occasional postural changes'" without performing a function-by-
function assessment on the record.  (Pl. Br. 19)(quoting (R.
19)).  The Commissioner argues that the ALJ included a function-
by-function assessment when posing hypothetical questions to the
vocational expert, and therefore, the failure to include the
function-by-function assessment in the decision is harmless.
(Comm'r Br. 12).  As plaintiff argues, SSR 96-8p explains that
assessment of RFC requires a function-by-function consideration
of each work-related ability <u>before</u> expressing the RFC in terms

-17-

of the exertional categories of "sedentary," "light," and so
forth.  West's Soc. Sec. Reporting Serv., Rulings 143, 145-46
(Supp. 2007).  Failure to perform a function-by-function
assessment may result in an improper finding at step four
regarding plaintiff's ability to perform his past relevant work
as he actually performed it.  Id.  Moreover, because certain
occupations do not require the capacity to meet all the strength
demands of the full range of work in a particular exertional
category, a failure to do a function-by-function assessment may
result in improper findings at step four regarding plaintiff's
ability to perform his past relevant work as it is generally
performed in the national economy or at step five regarding
plaintiff's ability to perform other work in the national
economy.  Id. at 145-46 (also see examples 1-3, p. 146).

     Here, the ALJ found at step four that plaintiff is able to
perform his past relevant work, not as he actually performed it,
but as it is generally performed in the economy.  (R. 20-21).
Therefore, if the ALJ did not perform a proper function-by-
function assessment, her decision is susceptible of the errors
described in SSR 96-8p as discussed above.

     As the Commissioner argues, the ALJ presented hypothetical
questions relating function-by-function RFC assessments to the
vocational expert at the hearing.  At the hearing, the ALJ
discussed the RFC assessments contained in Ex. 5F (R. 232-41) and

Ex. 14F (R. 344-51).  (R. 448-49).  She noted that Ex. 5F limited
plaintiff to sedentary exertional work (10 lb. occasional lift,
10 lb. frequent lift, stand/walk 2 hours, sit 6 hours, unlimited
push-pull) whereas Ex. 14F allowed light work (20 lb. occasional
lift, 10 lb. frequent lift, 6 hours sit, 6 hours stand/walk,
unlimited push-pull).  (R. 448-49).  With regard to Ex. 14F she
stated, "hold on, he's got some more in there. . . .  So he puts
them at light with occasional posturals and no hazardous working
conditions, I would say no extremes in temperature, and no, avoid
concentrated exposure to humidity, fumes, odors, dust, gases, and
poor ventilation."  (R. 449).

In the decision the ALJ assessed an RFC for "light work with
a sit/stand option and occasional postural changes."  (R. 19).
However, neither the RFC expressed in Ex. 14F nor the ALJ's
statement in his hypothetical questioning of the vocational
expert are entirely encompassed within the RFC finding in the
decision.  The RFC in Ex. 14F does not require a sit/stand option
although the decision finds it necessary.  (R. 345)(block stating
"periodically alternate sitting and standing" is not checked).
In Ex. 14F, for environmental limitations the block stating "None
established" is checked, but an "X" has been inserted in the
block requiring plaintiff to "Avoid All Exposure" to "Hazards."
(R. 348).  The decision does not find that plaintiff must avoid
all exposure to hazards.  Contrary to the ALJ's hypothetical at

-19-

the hearing, Ex. 14F contains no limitations regarding temperature, humidity, fumes, odors, gases, or ventilation, and the decision does not include those findings.  (R. 348). However, as the court found above, the ALJ erroneously accorded "controlling weight" to the medical opinions expressed in Ex. 14F.

Therefore, although the ALJ considered several individual functions while addressing the hypothetical questions to the vocational expert, her RFC assessment does not contain all of the findings considered.  Neither does it contain identical limitations with those found in Ex. 14F, although the ALJ stated she gave the medical opinion expressed in Ex. 14F "controlling weight."  The ambiguities presented in this situation have not been resolved, and the court cannot find that the error in failing to make a function-by-function RFC assessment in the decision was harmless.  Remand is necessary for the Commissioner to properly evaluate the medical opinions and then to properly perform a function-by-function assessment of plaintiff's RFC to determine whether he is able to perform his past relevant work or perform other jobs existing in the economy in significant numbers.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered in accordance with the

fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 25th day of March 2008, at Wichita, Kansas.

s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**